WILLIAM J. MEREDITH,

*vs.*

SAMUEL F. KNOX.

*Kent, June* 25, 1912.

A bond to compromise a prosecution for using a female under eighteen for sexual intercourse, which is a felony, is invalid.

A bond given to the father of a woman for the payment of money, in consideration that bastardy charges should not be prosecuted against the obligor's son for the maintenance of a child, of which the obligee's daughter was pregnant, merely providing for the relinquishment of a claim for the maintenance of the child, if any, born within four months, and not for the abandonment of a charge of using the female under eighteen for sexual intercourse, was not against public policy, but was based on a sufficient consideration, and was enforceable, in the absence of fraud or conspiracy.

Where bastardy proceedings had been instituted by the father of a woman against complainant's son, and complainant, after having been afforded means of investigation, executed a bond to defendant to compromise the charge, on which judgment was subsequently entered, and it appeared that the woman had no knowledge of such proceedings, the fact that it subsequently appeared that complainant's son was innocent of the charge, and that the woman denied his paternity of the child, was no ground for setting aside the judgment.

A bond given to the father of a woman pregnant with child in compromise of a legal proceeding against the obligor's son based on seduction by the son of the pregnant woman, is valid and the consideration therefor sufficient and not against public policy.

BILL TO ANNUL A JUDGMENT. The case was heard on bill, answer, depositions and exhibits, and the facts appear in the opinion of the Chancellor.

*John B. Hutton*, for the complainant.
*Thomas C. Frame, Jr.*, for the defendant.

THE CHANCELLOR. The bill is filed by the defendant in a judgment to have it declared null and void. By the bill it is

alleged that the plaintiff in the judgment, Samuel F. Knox, and his daughter conspired to falsely charge Graham Meredith, the son of the defendant in the judgment, with having used her for the purpose of sexual intercourse and with being the father of the child with which she was pregnant, she being then under eighteen years of age, and in pursuance of the conspiracy had issued a warrant for the arrest of Graham Meredith upon the charge of having so used her. In order to prevent a prosecution of the charge the complainant, William J. Meredith, gave to the defendant, Samuel F. Knox, his judgment bond for three hundred and sixty dollars upon which judgment was entered in the Superior Court for Kent County. It was claimed that the bond was void because the obligor was induced to give it by reason of the false charge and because it was accepted by the obligee as an inducement to stop further prosecution of the criminal charge. Suit was brought in Maryland on the judgment, and it was alleged that the complainant here had no defense of which he could avail himself in that suit.

The defendant denied the conspiracy and averred that the legal proceeding was taken against Graham Meredith, not on the statutory offense, but to hold him for the seduction. In support of this the defendant produced a written agreement between the obligor and obligee, made contemporaneously with the giving of the bond, wherein the obligee promised on behalf of himself and his daughter not to prosecute any action against Graham Meredith for or on account of any charges which had or might be brought "for the maintenance and support of any child or children which may be born to the said * * * within four months from the date hereof." It was further agreed that Samuel F. Knox was acting for himself and his daughter, and William J. Meredith was acting for himself and his son.

It was shown that when the bond was given and the agreement signed, Hattie was pregnant and a child was born within four months of the date of the bond and agreement, but she denied that Graham Meredith was the father of the child and this was also denied by Graham Meredith. The daughter also disclaimed any knowledge of the making of the charge, or the giving of the bond, or the written agreement, until long

afterward, or giving her father at any time authority to act for her in the matter.

The affidavit of Samuel F. Knox, on which the warrant against Graham Meredith was issued, after stating the pregnancy of his daughter, declared:

"I charge Graham Meredith, single man, with having seduced my daughter, and that she is under the age of consent."

When the bond was given and the agreement made there was a legal proceeding pending against the son of the obligor on the complaint of the obligee. The contention of the complainant was that the charge was not a bastardy proceeding to fix the paternity of the child and force him to provide for the care of the mother and child, but was a more serious one, viz.: the statutory offense of using a female child under eighteen years of age for sexual intercourse. To prove this the affidavit of Samuel F. Knox on which the warrant was issued was used and it bears that construction, though not necessarily.

It is unlawful, says the complainant's counsel, to compromise such a criminal charge for money paid and to be paid, and hence the bond is invalid. That principle of law is well established, and if the facts were as claimed by the complainant would probably justify a decree avoiding the transaction, unless the compromise of such a charge is permissible on grounds of public policy. But whatever the phraseology of the complaint may have been, the character of the warrant based thereon is not shown, for neither the warrant, or a copy thereof, was produced.

Assuming that the warrant followed the complaint, still the transaction between the parties is to be gathered from the written agreement between the obligor and obligee made contemporaneously with the giving of the bond and as part of the same transaction. From the agreement, then, it is clear that the bond was given to the father of a woman then pregnant for the payment of money in consideration that charges would not be prosecuted against the son of the obligor for the maintenance of the child with which the daughter was so pregnant.

The consideration for the giving of the bond was not the abandonment of the charge of the statutory offense, but a relinquishment of a claim for the maintenance of the child if any be born within four months.

There is no legal objection to such compromises, but on the contrary they are encouraged by the courts for the sake of those guilty of the illicit intercourse, for the sake of the child and to hide the scandal from the public. Such cases have always and rightly been considered private matters in which the public has no interest, except to see to it that the unfortunate woman and her child are protected and the expense of the care of her and her child shall not fall on the taxpayers, but on the seducer.

A promise to pay money in compromise of bastardy proceedings already taken cannot be avoided on the ground that such a compromise is contrary to public policy, or public morals, but is a valid promise and the consideration sufficient to support it. *Robinson v. Crenshaw*, 2 *Stew. & P.* (*Ala.*) 276; *Billingsley v. Clelland*, 41 *W. Va.* 234, 23 *S. E.* 812; *Holcomb v. Stimpson*, 8 *Vt.* 141; *Pflaum v. McClintock*, 130 *Pa. St.* 369, 18 *Atl.* 734; *Moon v. Martin*, 122 *Ind.* 211, 23 *N. E.* 668; *Hays v. McFarlan*, 32 *Ga.* 699, 79 *Am. Dec.* 317.

It is claimed, however, that it is proved by the testimony of both the seducer and seduced that the man charged was not the seducer. Without commenting on this testimony, and the probability of its truthfulness, it seems established that it is immaterial whether Graham Meredith was or was not the father of Hattie Knox's child. She was pregnant; her pregnancy had been charged to him in a legal proceeding; and a contract was made to pay money in consideration that the putative father should not be further prosecuted for the maintenance of the child. As a general principle the abandonment of judicial proceedings is a good consideration for a promise, though the demand be unfounded. As was said in *Moon v. Martin*, 122 *Ind.* 211, 23 *N. E.* 668:

"Where, however, there is an actual subject of dispute, and a suit has already been instituted, if parties meet fairly, upon equal terms, with equal knowledge, or means of knowledge, of all the facts, and, without fraud or

duress make a settlement, which is followed by a discontinuance of the suit, the compromise and discontinuance will be a sufficient consideration for a promise to pay money, without regard to the ultimate right of the case. Such a settlement estops both parties from any further litigation of the matter in dispute."

This principle has been distinctly applied to compromises of bastardy proceedings. In *Holcomb v. Stimpson*, 8 *Vt.* 141, the court enforced payment of a note given before the birth of a bastard child in compromise of a suit in bastardy, though proof was offered to show that the accused person could not have caused the pregnancy, in absence of fraud or imposition in bringing about the compromise. So also in *Billingsley v. Clelland*, 41 *W. Va.* 234, 23 *S. E.* 812, and several cases there cited.

In *Moon v. Martin*, 122 *Ind.* 211, 23 *N. E.* 668, of such defense, it was said:

"The compromise and settlement of a suit would be an idle and mischievous ceremony, if after a discontinuance had been secured, the very matter in dispute remained open and could be pleaded as a good defense to the notes given in settlement."

The innocence of a putative father was not considered a defense to a recovery of the note given in compromise of a charge against him in bastardy proceedings in the case of *Hargroves v. Freeman*, 12 *Ga.* 342, or in the case of *Merritt v. Flemming*, 42 *Ala.* 234.

It is unnecessary, therefore, to decide whether the testimony of Hattie Knox of statements made to her father and sister respecting her pregnancy and the paternity of the child is admissible, for the paternity of the child will not be determined in this case, and in view of the conclusions here reached is immaterial.

There was no evidence to sustain the allegation of a conspiracy between the obligee and his daughter respecting the charge against Graham Meredith. Indeed the daughter appeared as a witness for the complainant and testified that she did not know of the giving of the bond, or making of the agreement, until long after the occurrence, and, therefore, she could

not have conspired with him to obtain them. Nor was there evidence of any substantial misrepresentation of fact made by the obligee to the obligor in the procurement of the obligation. There was a charge against the son of the obligor made by the obligee and a legal proceeding against him based on the then existing pregnancy of the obligee's young daughter. That case was compromised, and that compromise was a good consideration. Whether the obligee was acting for the daughter with or without her knowledge was immaterial, for he had a right to make the charge and also to compromise it. So also it was unimportant, if true, that the obligee stated to the obligor that the daughter would appear against the obligor's son. It was not a representation of a fact but a declaration respecting probable future conduct of a third person.

It is immaterial that the bond in this case was given, not to the injured woman, but to her father. A note given for such a consideration by the despoiler to the mother of the despoiled was held valid in *Merritt v. Flemming*, 42 *Ala.* 234, though the offspring of the illicit intercourse did not come to full life after the compromise had been effected. But it is urged by the complainant that the bond in this case was made not by the accused but by his father, and, therefore, that a different rule should be applied. It is urged that where the obligation is made by the reputed father it must be assumed that he acted with full knowledge as to the facts upon which his liability is based, but that where the obligor is other than the putative father he acts without such knowledge. Whether, or not, this be a sound distinction applicable in some cases, it surely is not pertinent here. The obligor, the complainant in this case, undertook in the agreement to act for his son and it is his own lookout if he was not informed of the facts. Besides, he did not agree to the compromise when it was first suggested, and did not do so until after he had conferred with his son. It is not an unreasonable inference then to say that he acted with knowledge, or means of knowledge of the facts of the case, and so that the obligor and obligee negotiated on equal terms. If one undertakes to effect a compromise of a matter affecting another person for and on behalf of such person, he is

surely charged with knowing the facts known to the person he represents. There was no evidence that unfair advantage was taken of the obligor, or any undue pressure brought upon him, for he was amply protected from both by the presence at the negotiations and in the compromise of his legal adviser, who in fact drafted the bond and agreement.

There is, then, in this case no equitable ground for annulling the bond in question. A bond given to the father of a woman pregnant with child in compromise of a legal proceeding against the obligor's son based on seduction by the son of the pregnant woman, is valid and the consideration therefor sufficient and not against public policy. The bill must, therefore, be dismissed with costs against the complainant.

A decree will be entered accordingly.